NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEBORAH GROSS-QUATRONE., <br><br> Plaintiff, <br><br> v. <br><br> BONNIE MIZDOL, et al., <br><br> Defendants. | Civil Action No: 17-13111-SDW-LDW <br><br> **OPINION** <br><br><br> September 24, 2019 |

**WIGENTON**, District Judge.

Before this Court is Defendants Bonnie Mizdol ("Judge Mizdol"), Diana Moskal ("Moskal"), and Laura Simoldoni's ("Simoldoni") (collectively, "Defendants") Motion to Dismiss Plaintiff Deborah Gross-Quatrone's ("Plaintiff") Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, the Motion to Dismiss is **GRANTED**.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

On March 3, 2015, Plaintiff became a New Jersey Superior Court judge. (D.E. 36 ¶ 11.) At all relevant times, she worked in the Bergen Vicinage and reported to Judge Mizdol, her

1

Assignment Judge.[1] (*Id.* ¶¶ 2, 14-16.) Plaintiff and Judge Mizdol had numerous conflicts during Plaintiff's first months on the bench, including disagreements over Plaintiff's workload and work product, her hiring and treatment of her law clerk, and her demeanor and appearance. (*See generally* D.E. 36.) The relationship grew so strained that, on December 21, 2015, Plaintiff attempted to record a meeting she had with Judge Mizdol and others without their knowledge or consent. (*Id.* ¶ 33.) Simoldoni, a participant in the meeting, discovered Plaintiff's recording device and took it from her purse. (*Id.*)

On December 23, 2015, Judge Mizdol reported Plaintiff to the Advisory Committee on Judicial Conduct ("ACJC"), alleging that "Plaintiff had willfully violated the Judiciary's internal employment policies by allowing [her] law clerk. . . to start early." (*Id.* ¶ 34.) On March 6, 2017, after an investigation into the allegation, the ACJC issued a three-count Formal Complaint against Plaintiff, charging her with violating multiple provisions of the Code of Judicial Conduct "relating to her surreptitious recordings of meetings with her Assignment Judge, her associated misrepresentations in respect of that conduct, use of her judicial secretary to perform personal tasks, and her 2015/2016 law clerk's early start date." (D.E. 38-1 Ex. A at 3-4, 28; Ex. B.)[2] Plaintiff answered the complaint, amended her answer, and participated in a three-day formal

---

[1] Plaintiff was assigned to the Bergen Vicinage in the Family Division from July 6, 2015 until January 11, 2016, when she was re-assigned to the Essex Vicinage. (D.E. 36 ¶¶ 14-15, 35.)

[2] Although generally a court may only consider the contents of the complaint on a 12(b)(6) motion to dismiss, the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion" to one for summary judgment. *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider documents "*integral to or explicitly relied* upon in the complaint," *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citations omitted, emphasis in original); *see also In re Lipitor Antitrust Litig.*, 868 F.3d 231, 249 (3d Cir. 2017), or matters of public record, *Chugh v. W. Inventory Servs., Inc.*, 333 F. Supp. 285, 289 (D.N.J. 2004). Here, Defendants have submitted records from the ACJC proceedings, all of which are public, and may be considered by this Court on a motion to dismiss. *See S. Cross Overseas Agencies v. Wah Kwong Shipping Grp. Ltd.*; *see also* N.J. Ct. R. 2:15-20(b) (providing that after the ACJC "files a formal complaint against the judge, the complaint and all further proceedings thereon shall be public . . ."); https://njcourts.gov/attorneys/acjc.html?lang=eng (last visited Sept. 19, 2019).

hearing in January 2018. (D.E. 38-1 Ex. A at 4.) At that hearing, Plaintiff was represented by counsel, testified on her own behalf, called five witnesses, submitted affidavits from two others, and offered exhibits into evidence. (*Id.* at 4-5). Plaintiff also filed a post-hearing brief in her defense. (*Id.* at 6.) Plaintiff's counsel argued in his opening arguments that Plaintiff had no choice but to record her meetings because of Judge Mizdol's "abusive and inappropriate language." (D.E. 38-1 Ex. C at 7.) During the hearing, Plaintiff argued the recordings were justified in order "to protect herself from recurring 'workplace hostilities, belittling in the presence of staff, and verbal abuse' allegedly inflicted by her Assignment Judge, . . ." and that "[t]he act of recording was protected by both the federal Constitution and New Jersey law." (D.E. 38-1 Ex. A at 22; Ex. C Light Opening at 7:13-14; Ex. H at 6.) Plaintiff further pointed to "four exchanges with Judge Mizdol" which she contended showed that "Judge Mizdol was verbally abusive and demeaning towards her." (D.E. 38-1 Ex. A at 23; *see also* Ex. C at 75:18-20.) Plaintiff additionally argued that when Simoldoni reached into her purse and took the recorder she "committed an illegal act" of confiscation. (D.E. 38-1 Ex. C Gross-Quatrone Direct at 54:24-25; Ex. H ¶¶ 32, 35.)

The ACJC considered and rejected Plaintiff's arguments, finding that "[w]hile [Plaintiff] may have perceived herself to be the subject of hostile treatment, she had available to her several options to address that situation short of engaging in deceptive and insubordinate conduct." (D.E. 38-1 Ex. A at 27.) On September 10, 2018, the ACJC presented its findings and recommendation to the New Jersey Supreme Court ("NJSC") and recommended that Plaintiff be "suspended from the performance of her judicial duties, without pay, for a period of two months." (D.E. 38-1 Ex. A at 36.) The NJSC subsequently issued an Order to Show Cause as to why Plaintiff should not be disciplined. (*Id.* Ex. F.) After considering the parties' briefs and hearing oral argument, the

court adopted the ACJC's findings and recommendations, and formally suspended Plaintiff. (*Id.* Ex. G.)

On December 14, 2017, Plaintiff filed suit against Defendants in this Court for violations of her federal and state constitutional and statutory rights.[3] (D.E. 1.) The claims currently before this Court are: Violation of 42 U.S.C. §§ 1983, 1985 (Count One)[4]; Civil Conspiracy (Count Two); Violation of the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-2(c) (Count Three); and Violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10-5:1 *et seq.* (Count Four). (D.E. 36 at 14-18.) Defendants moved to dismiss and all briefing on the motion was timely filed. (D.E. 38-2, 42, 43.)

## II. LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

---

[3] Plaintiff subsequently amended her Complaint twice. (D.E. 4, 5, 36.)

[4] Plaintiff pleads that Defendants created a hostile work environment and discriminated against her on the basis of her sex and gender in violation of the Equal Protection Clause of the Fourteenth Amendment because they believed that "Plaintiff's dress, hairstyle, jewelry and other expressions of traditionally feminine gender traits were not appropriate for a Judge of the Superior Court." (D.E. 36 ¶ 44.) Plaintiff also pleads that Defendant Simoldoni violated her First and Fourth Amendment rights "when she seized Plaintiff's recording device on December 21, 2015 and had a copy made of its contents." (*Id.* ¶ 46.)

4

In considering a Motion to Dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

### III. DISCUSSION

Defendants' motion to dismiss is, at its core, founded on the contention that Plaintiff is estopped from bringing her current claims because they are "premised on the same set of facts," involve the same issues, and "were fully litigated" in the disciplinary proceedings before the ACJC and NJSC. (D.E. 38-2 at 1.) As such, Defendants ask this Court to dismiss Plaintiff's claims pursuant to the doctrines of claim and issue preclusion. (*Id.* at 9-23.) [5]

---

[5] As an initial matter, this Court finds that the ACJC and the New Jersey Supreme Court were acting in a judicial capacity in hearing and entering judgments in the disciplinary proceedings against Plaintiff. The NJSC established the ACJC to implement rules promulgated by the New Jersey Supreme Court. N.J. Ct. R. 2:15-1 *et seq.* The ACJC investigates complaints of misconduct, files formal complaints, effectuates service of process, permits the filing of an answer and the exchange of discovery, holds hearings where testimony is taken under oath and the presentation of a defense is permitted, allows for the submission of briefing, makes findings of fact, and ultimately provides a recommendation to the NJSC on disciplinary matters. *See* N.J. Ct. R. 2:15-1 *et seq.* The NJSC then reviews the record and makes a final determination as to what discipline will be imposed. N.J. Ct. R. 2:15-17, 18. As such,

A.

"*Res judicata*, or claim preclusion, bars a party from pursuing a second suit against the same adversary based on the same cause of action." *DVL, Inc. v. Congoleum Corp.*, Civ. No. 17-4261, 2018 WL 4027031, at *5 (D.N.J. Aug. 23, 2018); *see also In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008). The doctrine is a "court-created rule . . . designed to draw a line between the meritorious claim on the one hand, and the vexatious, repetitious and needless claim on the other hand." *Purtner v. Heckler*, 771 F.2d 682, 689-90 (3d Cir. 1985). The doctrine applies when there has been "(1) a final judgment on the merits in a prior suit; (2) involving the same parties or their privies; and (3) a subsequent suit based on the same cause of action." *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 172–73 (3d Cir. 2009) (citation omitted); *see also McLaughlin v. Bd. of Tr. of Nat'l Elevator Indus. Health Benefit Plan*, 686 F. App'x 118, 121 (3d Cir. 2017); *Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272, 279 (3d Cir. 2016); *Sheridan v. NGK Metals Corp.,* 609 F.3d 239, 260 (3d Cir. 2010). In short, claim preclusion bars a party from bringing suit against the same adversary where the second suit is "essentially identical" to the first. *R&J Holding Co. v. Redevelopment Auth. Cty. Of Montgomery*, 670 F.3d 420, 427 (3d Cir. 2011); *see also Duhaney v. Att'y Gen. of U.S.,* 621 F.3d 340, 347 (3d Cir. 2010); *Sai Ram Imports, Inc. v. Meenakshi Oversees LLC*, Civ. No. 17-11872, 2018 WL 2045996, at *4 (D.N.J. May 1, 2018) (noting that cases arise from the same cause of action where they share "an essential similarity of . . . underlying events")

---

proceedings before those bodies constitute "suits" for the purpose of conducting a claim or issue preclusion analysis. *See Middlesex Cty. Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 433 (1982) (noting that "a disciplinary proceeding is judicial in nature, initiated by filing a complaint with an ethics and grievance committee"); *New Jersey-Phila. Presbytery of the Bible Presbyterian Church v. N.J. State Bd. of Higher Educ.*, 654 F.3d 868, 876 n. 12 (3d Cir. 1981); *Randolph v. Lipscher*, 641 F. Supp. 767, 777-78 (D.N.J. 1986) (finding that "a final decision resulting from the New Jersey attorney disciplinary proceedings . . . would have preclusive effect under New Jersey law").

(internal citation omitted); *Queen v. Cedarbrook Condo. Ass'n, Inc.*, Civ. No. 14-6393, 2015 WL 790592, at *3 (D.N.J. Feb. 24, 2015). Claim preclusion "applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined." *McNeil v. Legislative Apportionment Comm'n*, 177 N.J. 364, 395 (2003).

Here, Plaintiff's federal case is not "essentially identical" to the disciplinary action previously litigated, and therefore, not barred by *res judicata*. The disciplinary proceedings were rooted in allegations of judicial misconduct, whereas, Plaintiff's federal case is grounded in allegations of discrimination and violations of Plaintiff's constitutional rights. Although "[t]he distinction is fine" this Court is satisfied that "the cases are not essentially identical. . . . Therefore, Plaintiff's federal complaint is not based on the very same claim at issue in the prior proceeding." *Campbell v. Sup. Ct. of N.J.*, Civ. No. 11-555, 2012 WL 1033308, at *12 (D.N.J. Mar. 27, 2012).

B.

The doctrine of collateral estoppel, or issue preclusion, attempts to promote judicial efficiency by preventing "a party from relitigating issues that were adjudicated in a prior lawsuit." *Ali v. Univ. Corr. Health Care*, Civ. No. 17-1285, 2018 WL 3158811, at *2 (D.N.J. June 28, 2018); *see also Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979); *In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997). "Fundamental to the application of estoppel is an assessment of considerations such as 'finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion, and uncertainty; and basic fairness.'" *Winters v. N. Hudson Regional Fire & Rescue*, 50 A.3d 649, 659 (N.J. 2012). "[A] party seeking to invoke the doctrine of collateral estoppel must demonstrate that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the proceeding; (3) the court in the prior

proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." *Ali,* 2018 WL 3158811 at *3. In determining whether the doctrine applies, a court may consider "a range of factors, including 'the relationship of the parties, the surrounding circumstances giving rise to the litigation, and the nature of the claims and defenses as between the parties.'" *Winters*, 50 A.3d at 660.

Here, Plaintiff's current constitutional claims are based on her contentions that: 1) she was subject to a hostile work environment; 2) she permissibly recorded her meetings with Judge Mizdol; and 3) her recording device was wrongfully confiscated. (D.E. 36 at ¶¶ 24-33, 42-46.) The facts giving rise to those claims, as well their core issues, are identical to those raised by Plaintiff in her defense in the disciplinary proceedings. (*See* D.E. 38-1 Ex. A; Ex. C Light Opening at 7:13-25; Ex. H.) Those defenses were fully litigated, having been considered and rejected by the ACJC and the NJSC, which found them "inadequate to justify or mitigate [Plaintiff's] intentional misconduct in surreptitiously recording meetings with her Assignment Judge and then denying that very conduct when confronted by her Assignment Judge and the TCA." (D.E. 38-1 Ex. A at 27, Ex. G.) The disciplinary proceedings resulted in a final judgment on the merits in which the NJSC suspended Plaintiff for two months, finding that she had violated the Code of Judicial Conduct. (D.E. 38-1 Ex. A, G.) Because Plaintiff was a party to the Disciplinary Action, all four elements of a successful collateral estoppel claim have been met, and Counts One, Three, and Four will be dismissed.[6]

---

[6] Even if this Court were to reach the substance of Plaintiff's constitutional claims, they would still be dismissed. Plaintiff's First Amendment claim, although not clearly pled, will be construed as a claim that her free speech rights were violated when her recording device was taken by Simoldoni. (*See* D.E. 36 ¶ 46 (alleging that Simoldoni "deprived Plaintiff of the rights secured to her by the First and Fourth amendments when she seized Plaintiff's recording device . . . and had a copy made of its contents").) A free speech claim by a public employee requires a showing that: 1) the employee "spoke as a citizen on a matter of public concern;" and 2) that the government did not

C.

Count Two of the SAC raises a claim for civil conspiracy, alleging that "Defendants acted in concert to fabricate and exaggerate complaints and allegations that Plaintiff had been abusive to courthouse staff and that she violated a policy . . . concerning the permitted start dates for law clerks." (D.E. 36 ¶¶ 48-51.) Civil conspiracy under New Jersey law requires a showing that "two or more persons act[ed] in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in damage.'" *Defilippo v. Almeida*, Civ. No. 17-13026, 2019 WL 3985626, at *4 (D.N.J. Aug. 21, 2019) (internal citations omitted). Here, the SAC sets out only the most general and conclusory statements to support Plaintiff's conspiracy claim. Although Plaintiff broadly alleges that Defendants "acted in concert," "conspired" to violate her constitutional rights, and "agreed and conspired to falsely credit unfounded allegations," the SAC does not contain any factual support for those assertions. (D.E. 36 ¶¶ 42, 44, 49.) It does not articulate how, where, or when the Defendants entered into their alleged agreement, and only broadly speculates as to why they may have cooperated to "fabricate and exaggerate complaints" against Plaintiff. Further, to the extent that Plaintiff's conspiracy

---

have an "adequate justification for treating the employee differently from any other member of the general public." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). Speech involves a matter of public concern if it can "be fairly considered as relating to any matter of political, or social, or other concern to the community." *Green v. Phila. Hous. Auth.*, 105 F.3d 882, 885-86 (3d Cir. 1997). Here, Plaintiff was recording a private meeting involving matters of her employment. As such, any speech she engaged in did not involve matters of public concern.

Plaintiff's Fourth Amendment claim, that the seizure of her recording device violated the Fourth Amendment, would also likely fail because Plaintiff had no reasonable expectation of privacy in a device that was in plain view of Simoldoni and others. *See Katz v. U.S.*, 389 U.S. 347, 351 (1967) (holding that something "knowingly expose[d] to the public . . . is not a subject of Fourth Amendment protection"); *see also Horton v. California*, 496 U.S. 128, 141 (1990) (noting that "the seizure of an object in plain view does not involve an intrusion on privacy"); D.E. 38-1 Ex. A (stating that Simoldoni was seated next to Plaintiff and saw a "red light 'beaming' from the top of [Plaintiff's] purse").

claim is based on Defendants' communications to the ACJC, such as Judge Mizdol's complaint or Defendants' testimony, Defendants are immune from suit. *See* N.J. Ct. R. 2:15-22 (granting witnesses and complainants to the ACJC "absolute immunity from suit, whether legal or equitable in nature, for all communications to the Committee or its staff and for any testimony given at proceedings before the Committee, a three-judge panel, or the Supreme Court"). Therefore, Count Two of the SAC will be dismissed.

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**. An appropriate order follows.

  /s/ Susan D. Wigenton  
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:Clerk  
cc:Leda D. Wettre, U.S.M.J.  
Parties