UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEBORAH GROSS-QUATRONE, <br><br> Plaintiff, <br><br> v. <br><br> BONNIE MIZDOL, *et al.*, <br><br> Defendants. | Civil Action No. <br><br> 17-13111 (JXN) (LDW) <br><br> **MEMORANDUM OPINION AND ORDER** |

**LEDA DUNN WETTRE, United States Magistrate Judge**

Before the Court is defendants Bonnie Mizdol, Diana Moskal, and Laura Simoldoni's motion to compel plaintiff Deborah Gross-Quatrone to appear for an independent medical examination ("IME"). (ECF No. 163). The Court has considered plaintiff's opposition, defendants' reply, and plaintiff's surreply briefs (ECF Nos. 167, 168, 172), and heard oral argument on the motion on January 21, 2022. For the reasons that follow, defendants' motion to compel plaintiff's IME is **GRANTED**.

          **I.**  **BACKGROUND**

The Court omits the extensive procedural history of this and related actions and addresses only those facts relevant to the instant motion. In a Second Amended Complaint dated March 5, 2019, plaintiff, a New Jersey Superior Court Judge, alleges that New Jersey Superior Court, Bergen County, Assignment Judge Bonnie Mizdol, Trial Court Administrator Laura Simoldoni, and Family Division Manager Diana Moskal subjected her to a hostile work environment and discriminated against her on the basis of gender. Plaintiff primarily seeks damages for "severe emotional distress manifesting itself in ongoing physical symptoms such as sleeplessness, headaches, anxiety, migraines and nosebleeds and other damages." (Second Am. Compl. ¶ 38; *see*

*id.* ¶ 47 (alleging that defendants' conduct caused plaintiff "severe emotional distress with physical manifestations"); *id.* ¶¶ 54, 58 ("Defendants' actions have caused Plaintiff to suffer emotional and psychological injuries that have resulted in physical manifestations.")).[1]

There is no dispute that plaintiff continues to draw a salary as a Superior Court Judge and has not suffered lost wages to date. Thus, a significant amount of fact discovery has focused on the cause, nature, and extent of plaintiff's alleged emotional distress damages. In response to Interrogatory No. 7, plaintiff explained that she seeks damages for "emotional distress and humiliation, the loss of reputation, her personal and professional life as Plaintiff knew it, loss of enjoyment of life, embarrassment, alienation and loss of friendships in the legal community" and "many physical injuries . . . most notably . . . nosebleeds . . . so severe that they perforated a hole in Plaintiff's septum which is now a prosthetic. This, coupled with the extreme anxiety, the inability to function on a daily basis without help, the deterioration of . . . Plaintiff's body due to the stress and its relationship to Hashimotos, the deterioration of Plaintiff's mental condition, lack of confidence, and the sleeplessness and chronic headaches." (Dohn Decl., Ex. D, ECF No. 163-2). Plaintiff testified at deposition that in 2015 she started having nosebleeds so severe that they perforated her septum, requiring surgical repair (Pl. Depo. Tr. at 317:21 – 318:18, 321:25 – 323:24, ECF No. 167-1); that she was "spitting up blood and shaking. My thyroid went out of control. . . . I just was afraid of the next change, what was coming next. I was always going to doctors and chest pounding, nightmares" (*id.* at 316:19 – 317:6); and that she experienced "very, very intense" migraine headaches (*id.* at 332:6-21) as a result of defendants' alleged treatment of her. When

---

[1] At oral argument, plaintiff acknowledged that there is no contention that any defendant physically assaulted her; instead, she alleges that defendants caused her to suffer emotional distress so severe that it resulted in physical injuries such as nosebleeds and migraines. Put another way, plaintiff contends that the root cause of her physical injuries is emotional distress such that the alleged severity of her physical symptoms would be indicative of the severity of her emotional distress.

2

asked if the emotional distress she attributes to defendants continues to the present day, plaintiff testified that it "is never going to end.  This is -- this is the rest of my life.  This isn't going anywhere because this is inside of me." (*Id.* at 339:6-12).

In response to Interrogatory No. 11, plaintiff identified 21 different physicians and healthcare providers she consulted regarding the alleged emotional distress and other damages or injuries asserted in the Second Amended Complaint, including Dr. Joseph Acquaviva, a psychiatrist who has diagnosed her with major depressive disorder and generalized anxiety disorder. (Dohn Decl., Exs. D, G).  In a May 4, 2021 letter filed with the Court, plaintiff's former counsel identified Dr. Acquaviva as a testifying expert witness, (Dohn Decl., Ex. C, ECF No. 168-5), but plaintiff's current counsel now represents that "as long as there is no IME, we do not intend to call any expert witness to testify to plaintiff's emotional distress damages." (Surreply at 3, ECF No. 172).  Instead, plaintiff has expressed an intent to call her treating physicians, including Dr. Acquaviva, as fact witnesses on the topic of her emotional distress. (*Id.*).

Defendants seek to adduce evidence regarding the cause and severity of plaintiff's alleged emotional distress as part of their defense.  Defendants proposed that plaintiff be examined by Dr. Kenneth J. Weiss, a licensed psychiatrist who currently serves as a Clinical Professor of Forensic Psychiatry at the University of Pennsylvania. (Dohn Decl., Ex. F, ECF No. 163-2).  The examination would consist of a clinical interview lasting approximately two hours, and no specific tests would be administered.  Defense counsel represented that she will work with plaintiff's counsel to schedule the IME at a mutually agreeable time and location, and defendants have acceded to plaintiff's request that any IME be audio recorded and include a nurse observer.  As plaintiff has refused to appear for the IME with Dr. Weiss voluntarily, defendants now move the Court to compel her appearance pursuant to Rule 35 of the Federal Rules of Civil Procedure.

3

## II.   DISCUSSION

The Court may order a party to undergo a mental examination when the party's mental condition is "in controversy" and the movant establishes "good cause" for the examination. Fed. R. Civ. P. 35(a). A party's mental condition is in controversy "where, in addition to a claim of emotional distress, the case involves one or more of the following factors:

> (1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (5) plaintiff's concession that his or her mental condition is 'in controversy' within the meaning of Rule 35(a)."

*Kuminka v. Atlantic County N.J.*, 551 F. App'x 27, 29 (3d Cir. 2014) (per curiam) (quoting *Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995)). Generally, "'garden variety' emotional distress allegations that are part and parcel of the plaintiff's underlying claim" are insufficient to establish that a party's mental condition is in controversy under Rule 35. *Bowen v. Parking Auth. of City of Camden*, 214 F.R.D. 188, 193 (D.N.J. 2003).

The "good cause" element of Rule 35 is much less defined, and "what may be good cause for one type of examination may not be so for another." *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). When determining whether the movant has established good cause to compel a mental examination, the Court must weigh the relevance of the information sought, the need to "preserve the equal footing of the parties" with respect to their ability to evaluate one party's mental condition, and the availability of such information from other sources. *Womack v. Stevens Transport, Inc.*, 205 F.R.D. 445, 446-47 (E.D. Pa. 2001) (quotation omitted). Consequently, a motion to compel an examination pursuant to Rule 35 "requires a fact intensive analysis." *McLaughlin v. Atlantic City*, Civ. A. No. 05-2263, 2007 WL 1108527, at *2 (D.N.J. Apr. 10, 2007). *See Schlagenhauf*, 379 U.S. at 118-19 ("Rule 35, therefore, requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a

4

mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause.'"); *Conforti v. St. Joseph's Healthcare Sys., Inc.*, Civ. A. No. 17-50, 2020 WL 365100, at *3 (D.N.J. Jan. 22, 2020). The decision whether to compel a party to undergo an IME rests within the sound discretion of the Court. *McLaughlin*, 2007 WL 1108527, at *2.

Here, plaintiff has put her mental condition in controversy by stating her intention to offer the testimony of Dr. Acquaviva, her treating psychiatrist, who has diagnosed her with a specific mental or psychiatric injury or disorder – *i.e.*, major depressive disorder and generalized anxiety disorder for which he has prescribed medication. Plaintiff now claims that Dr. Acquaviva will not testify as an expert, but "a plaintiff cannot simply forgo presenting any expert or medical testimony in order to circumvent Rule 35. If a plaintiff has placed his mental status 'in controversy,' then a defendant is permitted to compel a Rule 35 examination, regardless of whether plaintiff intends to introduce medical expert testimony." *Montana v. County of Cape May Bd. of Freeholders*, Civ. A. No. 09-0755, 2013 WL 5724486, at *4 (D.N.J. Oct. 18, 2013). There is nothing in the record to suggest that Dr. Acquaviva or plaintiff herself would not testify as to the facts of plaintiff's psychiatric conditions, the severity of her symptoms, and treatments prescribed. Moreover, while plaintiff now states that she is not seeking damages for any psychological injury, she acknowledges that all of her alleged physical symptoms stem from the emotional distress she allegedly suffered as a result of defendants' treatment of her at work.

Plaintiff has also put her mental condition in controversy by pleading a claim of unusually severe emotional distress. At all times prior to the filing of this motion, plaintiff has consistently characterized her alleged emotional distress as severe. *See, e.g.*, Second Am. Compl. ¶¶ 38, 47, 54, 58; Response to Interrogatory No. 7 (stating that she seeks damages for emotional distress manifesting in a litany of injuries including "severe" nosebleeds, "extreme anxiety," and the

5

degradation of her physical and mental condition). She claims that her emotional distress and attendant physical injuries prompted her to seek treatment from 21 different healthcare providers, including surgery for her perforated septum and medication for her depression, anxiety, and thyroid disorders. *See, e.g.*, Response to Interrogatory No. 11; Pl. Depo. Tr. at 334:3-16 (testimony that plaintiff has required weekly treatment with Dr. Acquaviva for alleged emotional distress); Dohn Decl., Ex. G (records indicating that Dr. Acquaviva prescribed medication for treatment of depression and anxiety). Furthermore, plaintiff herself testified at length at deposition regarding the physical manifestations of the emotional distress she attributes to defendants. *See, e.g.*, Pl. Depo. Tr. at 323:7-24 (testimony regarding "continuous . . . very bad" nosebleeds "so intense that [plaintiff] was covered with blood"); *id.* at 325:7 – 326:4 (testimony that plaintiff spit up blood "at least daily" due to stress allegedly caused by defendants); *id.* at 327:16 – 328:17 (testimony that plaintiff required thyroid medication as a result of stress allegedly caused by defendants); *id.* at 330:2-9 (testimony that plaintiff experienced chest pounding on a daily basis); *id.* at 332:6-21 (testimony that plaintiff suffered "very, very intense" migraines worse than she had ever experienced prior to 2015).

In her opposition to this motion to compel, plaintiff now tries to downplay this as merely "garden variety" emotional distress.[2] While the term "garden variety emotional distress" lacks a

---

[2] For example, counsel selectively quotes from plaintiff's deposition testimony in an attempt to recast plaintiff's alleged anxiety as "normal" or simply everyday worrying about family and career that most people experience. (Pl. Opp. Br. at 8, ECF No. 167). But the quoted testimony was in response to a clean-up question at the end of the deposition inquiring into any *other* sources of stress or anxiety beyond the allegations in this action and a related state court action. Plaintiff had already testified at length about the fear, chest pounding, shaking, etc. she allegedly experienced as a result of defendants' conduct. Moreover, the Court may consider a variety of sources, not just plaintiff's deposition testimony, in determining whether her mental condition is in controversy. *See Schlagenhauf*, 379 U.S. at 119 (noting that "there are situations where the pleadings alone are sufficient" to establish that a mental condition is in controversy pursuant to Rule 35). As discussed above, the allegations in the Second Amended Complaint, plaintiff's interrogatory responses, plaintiff's medical records, and her deposition testimony all underlie the Court's finding that

precise legal definition, it generally applies when "the only evidence of plaintiff's emotional distress are general allegations in a complaint or general answers to interrogatories." *Montana*, 2013 WL 5724486, at *3. The record before this Court is replete with specific allegations, interrogatory responses, medical records, and deposition testimony regarding plaintiff's alleged emotional distress with wide-ranging physical manifestations, which she claims required extensive medical treatment, continued over a sustained period of time,[3] and which allegedly rendered her unable to function on a daily basis without assistance. The Court has no doubt that this rises to the level of "unusually severe." *Cf. Bird v. Borough of Moosic*, Civ. A. No 18-2289, 2020 WL 1904454, at *2-3 (M.D. Pa. Apr. 17, 2020) (plaintiff put mental condition in controversy by testifying at deposition that she was diagnosed with PTSD and suffered "extreme anxiety" requiring therapy and hospital visits); *Dibrito v. Harrisburg Area Cmty. Coll.*, Civ. A. No. 08-2308, 2010 WL 936236, at *1 n.4 (M.D. Pa. Mar. 12, 2010) (plaintiff put mental condition in controversy by alleging that her emotional distress was ongoing and accompanied by physical manifestations that aggravated her Lyme disease).[4]

---

plaintiff has put her mental condition in controversy.

[3] Plaintiff began seeing Dr. Acquaviva in December 2015 for treatment of the alleged emotional distress she attributes to defendants. (Pl. Depo. Tr. at 334:3-16). She testified that she continues to see Dr. Acquaviva weekly, and her emotional distress "is never going to end." (*Id.* at 334:14-16, 339:6-14). Although plaintiff now states that she does not seek damages for ongoing or future emotional distress, a claim for past emotional distress damages could still span 6 years or more.

[4] *Bowen* and *Conforti*, on which plaintiff principally relies, do not compel a different result. Given the necessarily fact specific nature of a Rule 35 application, those cases are of limited value to the Court's analysis and are not binding authority. Indeed, in *Bowen*, defendants sought to compel an IME of the plaintiff based on their assertion that "plaintiff's doctor found that the plaintiff was 'so severely mentally disabled that he was unable to return to work.'" 214 F.R.D. at 194. The Court declined to order an IME because there was no actual evidence in the record "which leads to the conclusion that the plaintiff was 'severely mentally disabled' or that he was 'unable to work.'" *Id.* at 195. Here, in contrast, the Court has considered the allegations in the Second Amended Complaint, plaintiff's interrogatory responses, plaintiff's medical records, and her deposition testimony in concluding that she has put her mental condition in controversy. In *Conforti*, plaintiff did not "allege a claim of unusually severe emotional distress," and the Court's analysis was limited to the issue of whether plaintiff alleged a specific mental or psychiatric injury or disorder.

Finally, defendants have established good cause for the IME. Plaintiff's alleged emotional distress is the primary source of her damages, and she has indicated that she intends to offer the testimony of her treating physicians as well as her own testimony to support those alleged damages. Counsel agreed at oral argument that a jury would be free to rely on such fact witness testimony to award plaintiff compensatory damages for severe emotional distress. Thus, even though plaintiff has tried to reframe her alleged injuries as garden variety emotional distress, "[i]t would be unfair to allow a plaintiff to plead a garden variety emotional distress claim, and then allow him or her to amplify that claim at trial with testimony regarding extreme anxiety and a formal diagnosis [of a mental disorder] without permitting the defense to conduct a mental health examination." *Bird*, 2020 WL 1904454, at *3. Fundamental fairness demands that defendants equally be allowed to inquire into the cause and extent of plaintiff's complex web of physical and mental symptoms with the assistance of a qualified expert. *See Ornelas v. Southern Tire Mart, LLC*, 292 F.R.D. 388, 392 (S.D. Tex. 2013) ("Even where a plaintiff chooses to forgo the use of an expert, courts have found that a defendant should not be compelled to limit its case to mere cross examination, as expert testimony can be essential to afford a defendant adequate opportunity to challenge the plaintiff's claim."); *Womack*, 205 F.R.D. at 447 (finding good cause for psychiatric IME because defense would be limited to cross-examination absent ability to develop its own evidence as to causation, an "insufficient test of truth"). The Court will not hamstring the defense by limiting that inquiry to the review of plaintiff's medical records and depositions of her treating physicians. Indeed, "[w]hile the probability of obtaining the information through other sources is pertinent to the 'good cause' inquiry, . . . a plaintiff may not avoid a Rule 35 examination simply

---

2020 WL 365100, at *2. Here, the Second Amended Complaint itself alleges numerous times that plaintiff suffered severe emotional distress with physical manifestations, and there is additional evidence in the record supporting the Court's conclusion that plaintiff's alleged emotional distress is unusually severe.

8

on the grounds that other sources of information, such as medical reports and depositions of plaintiff's treating physicians, are available." *Ornelas*, 292 F.R.D. at 392.

Plaintiff's insistence that there is no good cause for an IME with Dr. Weiss because she previously underwent an IME is misleading. Plaintiff did submit to an independent neuropsychological examination by Dr. Christine Ghilain in January 2020 in connection with her application for a disability pension from the State of New Jersey. (Dwyer Decl., Ex. C, ECF No. 167-1). However, it is beyond dispute that the Ghilain IME took place more than six months prior to the commencement of fact discovery in this matter, and the purpose of Dr. Ghilain's examination was to "better understand any physiological or cognitive abnormalities [plaintiff] may be experiencing" with respect to her claimed disability, not specifically to evaluate emotional distress allegedly caused by defendants. Furthermore, the IME was conducted at the behest of the State of New Jersey, which is not a party to this action, by a psychologist who, as far as the Court is aware, is not a testifying fact or expert witness in this action. Defendants Mizdol, Simoldoni, and Moskal are entitled to consult their own expert to rebut the primary source of plaintiff's alleged damages.

Plaintiff's remaining procedural objections to the IME with Dr. Weiss are overruled. The Court can discern no infirmity in the timing of defendants' November 8, 2021 notice to appear, which was served well within the expert discovery schedule then in place. In any event, expert discovery deadlines have since been stayed while the parties litigate the instant dispute, and plaintiff has not indicated that she has been prejudiced by any delay in defendants' request for an IME. In accordance with Rule 35(a)(2)(B), defendants have clarified that Dr. Weiss's exam will consist of a clinical interview lasting approximately two hours, as well as his review of discovery responses, medical records, deposition testimony, and any expert report plaintiff may produce regarding emotional distress. The scope of the examination is limited to plaintiff's claims of

emotional distress.  The Court is confident that the parties can come to an agreement about the time and place for the IME.

### III.   CONCLUSION

Accordingly, defendants' motion to compel plaintiff to appear for an IME (ECF No. 163) is **GRANTED**.[5]

Dated:        January 27, 2022

                                             *s/ Leda Dunn Wettre*
                                             Hon. Leda Dunn Wettre
                                             United States Magistrate Judge

Original:     Clerk of the Court
    cc:     Hon. Julien Xavier Neals, U.S.D.J.
           All Parties

---

[5] Should plaintiff timely appeal this Order, as counsel indicated is likely, the time for completion of the IME will be stayed pending the outcome of any such appeal.