UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEBORAH GROSS-QUATRONE,<br><br>Plaintiff,<br><br>v.<br><br>BONNIE MIZDOL, *et al.*,<br><br>Defendants. | Civil Action No. 17-13111 (JXN) (LDW)<br><br>**OPINION** |

**NEALS**, District Judge

Before the Court is Plaintiff Deborah Gross-Quatrone's ("Plaintiff") appeal (ECF No. 180) from the January 27, 2022 Memorandum Opinion and Order of the Honorable Leda Dunn Wettre, U.S.M.J. ("Judge Wettre" or "Magistrate Judge"), granting Defendants Bonnie Mizdol, Diana Moskal, and Laura Simoldoni's motion to compel Plaintiff to undergo an independent medical examination ("IME") pursuant to Rule 35 of the Federal Rules of Civil Procedure (ECF No. 178). Defendants opposed the appeal (ECF No. 181), and Plaintiff replied in further support, (ECF No. 184). No oral argument was heard. Fed. R. Civ. P. 78. For the reasons expressed below, Plaintiff's appeal is **DENIED**.

I.      BACKGROUND[1]

In the Second Amended Complaint dated March 5, 2019 (ECF No. 36), Plaintiff, a New Jersey Superior Court Judge, alleges that New Jersey Superior Court, Bergen County, Assignment Judge Bonnie Mizdol, Trial Court Administrator Laura Simoldoni, and Family Division Manager Diana Moskal (collectively, "Defendants") subjected her to a hostile work

---
[1] The Court adopts the background set out in Judge Wettre's January 27, 2022 Memorandum Opinion and Order (ECF No. 178).

environment and discriminated against her on the basis of gender. Plaintiff primarily seeks damages for "severe emotional distress manifesting itself in ongoing physical symptoms such as sleeplessness, headaches, anxiety, migraines and nosebleeds and other damages." (Second Am. Compl. ¶ 38; *see id.* ¶ 47 (alleging that defendants' conduct caused plaintiff "severe emotional distress with physical manifestations"); *id.* ¶¶ 54, 58 ("Defendants' actions have caused Plaintiff to suffer emotional and psychological injuries that have resulted in physical manifestations.")).[2]

There is no dispute that Plaintiff continues to draw a salary as a Superior Court Judge and has not suffered lost wages to date. Thus, a significant amount of fact discovery has focused on the cause, nature, and extent of Plaintiff's alleged emotional distress damages. In response to Interrogatory No. 7, Plaintiff explained that she seeks damages for "emotional distress and humiliation, the loss of reputation, her personal and professional life as Plaintiff knew it, loss of enjoyment of life, embarrassment, alienation and loss of friendships in the legal community" and "many physical injuries . . . most notably . . . nosebleeds . . . so severe that they perforated a hole in Plaintiff's septum which is now a prosthetic. This, coupled with the extreme anxiety, the inability to function on a daily basis without help, the deterioration of . . . Plaintiff's body due to the stress and its relationship to Hashimoto, the deterioration of Plaintiff's mental condition, lack of confidence, and the sleeplessness and chronic headaches." (Dohn Decl., Ex. D, ECF No. 163-2). Plaintiff testified at deposition that in 2015 she started having nosebleeds so severe that they perforated her septum, requiring surgical repair (Pl. Dep. Tr. 317:21 – 318:18, 321:25 – 323:24, ECF No. 167-1); that she was "spitting up blood and shaking. My thyroid went out of control. . . . I just was afraid of the next change, what was coming next. I was always going to doctors and

---

[2] At oral argument on the motion to compel, Plaintiff acknowledged that there is no contention that any defendant physically assaulted her; instead, she alleges that defendants caused her to suffer emotional distress so severe that it resulted in physical injuries such as nosebleeds and migraines. Put another way, Plaintiff contends that the root cause of her physical injuries is emotional distress such that the alleged severity of her physical symptoms would be indicative of the severity of her emotional distress.

chest pounding, nightmares" (*id.* at 316:19 – 317:6); and that she experienced "very, very intense" migraine headaches (*id.* at 332:6-21) because of Defendants' alleged treatment of her. When asked if the emotional distress she attributes to Defendants continues to the present day, Plaintiff testified that it "is never going to end. This is -- this is the rest of my life. This isn't going anywhere because this is inside of me." (*Id.* at 339:6-12.)

In response to Interrogatory No. 11, Plaintiff identified 21 different physicians and healthcare providers she consulted regarding the alleged emotional distress and other damages or injuries asserted in the Second Amended Complaint, including Dr. Joseph Acquaviva ("Dr. Acquaviva"), a psychiatrist who has diagnosed her with major depressive disorder and generalized anxiety disorder. (Dohn Decl., Exs. D, G.) In a May 4, 2021 letter filed with the Court, Plaintiff's former counsel identified Dr. Acquaviva as a testifying expert witness, (Dohn Decl., Ex. C, ECF No. 168-5), but Plaintiff's current counsel now represents that "as long as there is no IME, we do not intend to call any expert witness to testify to Plaintiff's emotional distress damages." (Surreply at 3, ECF No. 172.) Instead, Plaintiff has expressed an intent to call her treating physicians, including Dr. Acquaviva, as fact witnesses on the topic of her emotional distress. (*Id.*)

Defendants seek to adduce evidence regarding the cause and severity of Plaintiff's alleged emotional distress as part of their defense. Defendants proposed that Plaintiff be examined by Dr. Kenneth J. Weiss ("Dr. Weiss"), a licensed psychiatrist who currently serves as a Clinical Professor of Forensic Psychiatry at the University of Pennsylvania. (Dohn Decl., Ex. F, ECF No. 163-2.) The examination would consist of a clinical interview lasting approximately two hours, and no specific tests would be administered. Defense counsel represented that she would work with Plaintiff's counsel to schedule the IME at a mutually agreeable time and

3

location, and Defendants have acceded to Plaintiff's request that any IME be audio recorded and include a nurse observer. As Plaintiff has refused to appear for the IME with Dr. Weiss voluntarily, Defendants moved the Court to compel her appearance pursuant to Rule 35 of the Federal Rules of Civil Procedure. (ECF No. 163.)

Judge Wettre granted Defendants' motion and entered the January 27, 2022 Memorandum Opinion and Order granting Defendants' motion to compel Plaintiff to undergo an IME.

The instant appeal followed.

## II.   STANDARD OF REVIEW

The clearly erroneous or contrary to law standard of review is applicable to Plaintiff's appeal from the Magistrate Judge's determining pretrial discovery matters. *Andrews v. Goodyear Tire & Rubber Co.,* 191 F.R.D. 59, 68 (D.N.J. 2000); L. Civ. R. 72.1 cmt. 3.

A magistrate judge's finding is "clearly erroneous when, although there may be some evidence to support it, the reviewing court, after considering the entirety of the evidence, 'is left with the definite and firm conviction that a mistake has been committed.'" *Richardson,* 2010 WL 3404978, at *3 (emphasis added) (quoting *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.,* 131 F.R.D. 63, 65 (D.N.J. 1990) (quotations omitted). "A magistrate judge's decision is 'contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." *Id.* (quoting *Kounelis v. Sherrer,* 529 F. Supp. 2d 503, 518 (D.N.J. 2008) (citation omitted)). "A district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review." *Andrews,* 191 F.R.D. 59, 68 (D.N.J. 2000) (citations omitted). Indeed, "[u]nder the clearly erroneous standard, the reviewing court will not reverse the magistrate judge's determination even if the court might have decided the matter differently."

*Atain Specialty Ins. Co. v. Ne. Mountain Guiding LLC,* No. 3:16-05129, 2021 WL 2660302, at *2 (D.N.J. June 29, 2021) (citing *Cardona v. Gen. Motors Corp.,* 942 F. Supp. 968, 971 (D.N.J. 1996)).

As the party filing the appeals, Plaintiff bears the burden of demonstrating that the Magistrate Judge's decision was clearly erroneous, an abuse of discretion, or contrary to law. *Supernus Pharms., Inc. v. Actavis, Inc.*, No. 13-4740, 2014 WL 654594, at *1 (D.N.J. Feb. 20, 2014) (citing *Montana v. Cty. of Cape May Bd. of Freeholders*, No. 09-0755, 2013 WL 5724486, at *1 (D.N.J. Oct. 18, 2013)); *Sensient Colors,* 649 F. Supp. 2d at 315 (citing *Kounelis,* 529 F. Supp. 2d at 518).

## III. DISCUSSION

Plaintiff contends that because Dr. Acquaviva is being called as a fact witness offering testimony of Plaintiff's symptoms and treatment and not as an expert who will testify as to emotional distress damages, his testimony does not place her mental condition in controversy. (Pl. Br. at 19–20.) In support of this position, Plaintiff cites cases that she contends hold that an IME is not required when a plaintiff relies on her treating physicians merely as fact witnesses to support her claim. *See, e.g., Bowen v. Parking Authority of Camden,* 214 F.R.D. 188, 189–90 (D.N.J. 2003), *Bridges v. Eastman Kodak Co.,* 850 F. Supp. 216, 222 (S.D.N.Y 1994), and *O'Quinn v. New York Univ. Medical Ctr.,* 163 F.R.D. 226, 227–28 (S.D.N.Y. 1995).

Judge Wettre found that Plaintiff placed her mental condition in controversy by (1) "stating her intention to offer the testimony of Dr. Acquaviva, her treating physician, who diagnosed her with a specific mental or psychiatric injury or disorder – i.e., major depressive disorder and generalized anxiety disorder, for which he has prescribed medication," and (2) by "pleading a claim of unusually severe emotional distress." (ECF No. 178 at 5.).

Plaintiff claims she will not assert claims for ongoing or future emotional distress damages and will not seek damages for any specific psychiatric condition. (Pl. Br. at 23.) In her deposition testimony, however, Plaintiff stated that her emotional distress attributable to these Defendants "is never going to end." (Ex. E, at 339:10–14.) Judge Wettre reasoned, even with taking into account her newfound position that she is not going to seek damages for ongoing or future emotional distress, "a claim for past emotional distress damages could still span 6 years or more." (ECF No. 178 at 7 n.3.)

In her ruling, Judge Wettre stated that the Court may order a party to undergo a mental examination when the party's mental condition is "in controversy" and the movant establishes "good cause" for the examination. Fed. R. Civ. P. 35(a). A party's mental condition is in controversy "where, in addition to a claim of emotional distress, the case involves one or more of the following factors:

> (1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (5) plaintiff's concession that his or her mental condition is 'in controversy' within the meaning of Rule 35(a)."

*Kuminka v. Atlantic County N.J.*, 551 F. App'x 27, 29 (3d Cir. 2014) (per curiam) (quoting *Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995)). (ECF No. 178, at 4.)[3]

The "good cause" element of Rule 35 is much less defined, and "what may be good cause for one type of examination may not be so for another." *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). When determining whether the movant has established good cause to compel a mental examination, the Court must weigh the relevance of the information sought, the need to "preserve the equal footing of the parties" with respect to their ability to evaluate one party's mental condition, and the availability of such information from other sources. *Womack v. Stevens*

---

[3] The Court cites the page numbers listed in the ECF header.

*Transport, Inc.*, 205 F.R.D. 445, 446-47 (E.D. Pa. 2001) (quotation omitted). Consequently, a motion to compel an examination pursuant to Rule 35 "requires a fact intensive analysis." *McLaughlin v. Atlantic City*, Civ. A. No. 05-2263, 2007 WL 1108527, at *2 (D.N.J. Apr. 10, 2007). *See Schlagenhauf*, 379 U.S. at 118-19 ("Rule 35, therefore, requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause.'"); *Conforti v. St. Joseph's Healthcare Sys., Inc.*, Civ. A. No. 17-50, 2020 WL 365100 at *3 (D.N.J. Jan. 22, 2020). The decision whether to compel a party to undergo an IME rests within the sound discretion of the Court. *McLaughlin*, 2007 WL 1108527 at *2.

Judge Wettre found that Plaintiff has put her mental condition in controversy by stating her intention to offer the testimony of Dr. Acquaviva, her treating psychiatrist, who has diagnosed her with a specific mental or psychiatric injury or disorder – *i.e.*, major depressive disorder and generalized anxiety disorder for which he has prescribed medication. Judge Wettre further found that once a plaintiff has placed mental status 'in controversy,' then a defendant is permitted to compel a Rule 35 examination, regardless of whether plaintiff intends to introduce medical expert testimony." *Montana v. County of Cape May Bd. of Freeholders*, Civ. A. No. 09-0755, 2013 WL 5724486, at *4 (D.N.J. Oct. 18, 2013). (*Id.* at 5.)

As Judge Wettre noted, Plaintiff put her mental condition in controversy by pleading a claim of unusually severe emotional distress. (*See, e.g.*, Second Am. Compl. ¶¶ 38, 47, 54, 58; Response to Interrogatory No. 7 (stating that she seeks damages for emotional distress manifesting in a litany of injuries including "severe" nosebleeds, "extreme anxiety," and the degradation of her physical and mental condition.) Plaintiff sought treat treatment from 21

different healthcare providers, including surgery for her perforated septum and medication for her depression, anxiety, and thyroid disorders. (*See, e.g.*, Response to Interrogatory No. 11; Pl. Dep. Tr. 334:3-16 (testimony that plaintiff has required weekly treatment with Dr. Acquaviva for alleged emotional distress); Dohn Decl., Ex. G (records indicating that Dr. Acquaviva prescribed medication for treatment of depression and anxiety.)) Furthermore, Plaintiff testified at length at deposition regarding the physical manifestations of the emotional distress she attributes to defendants. (*See, e.g.*, Pl. Dep. Tr. 323:7-24 (testimony regarding "continuous . . . very bad" nosebleeds "so intense that [plaintiff] was covered with blood"); *id.* at 325:7 – 326:4 (testimony that plaintiff spit up blood "at least daily" due to stress allegedly caused by defendants); *id.* at 327:16 – 328:17 (testimony that plaintiff required thyroid medication as a result of stress allegedly caused by defendants); *id.* at 330:2-9 (testimony that plaintiff experienced chest pounding on a daily basis); *id.* at 332:6-21 (testimony that plaintiff suffered "very, very intense" migraines worse than she had ever experienced prior to 2015.)

> Judge Wettre stated that,
>
> The record before this Court is replete with specific allegations, interrogatory responses, medical records, and deposition testimony regarding plaintiff's alleged emotional distress with wide-ranging physical manifestations, which she claims required extensive medical treatment, continued over a sustained period of time, and which allegedly rendered her unable to function on a daily basis without assistance. The Court has no doubt that this rises to the level of "unusually severe." *Cf. Bird v. Borough of Moosic*, Civ. A. No 18-2289, 2020 WL 1904454, at *2-3 (M.D. Pa. Apr. 17, 2020) (plaintiff put mental condition in controversy by testifying at deposition that she was diagnosed with PTSD and suffered "extreme anxiety" requiring therapy and hospital visits); *Dibrito v. Harrisburg Area Cmty. Coll.*, Civ. A. No. 08- 2308, 2010 WL 936236, at *1 n.4 (M.D. Pa. Mar. 12, 2010) (plaintiff put mental condition in controversy by alleging that her emotional distress was ongoing and accompanied by physical manifestations that aggravated her Lyme disease). (Footnote omitted).

(*Id.* at 7.)

As Judge Wettre found, fundamental fairness demands that defendants equally be

allowed to inquire into the cause and extent of plaintiff's complex web of physical and mental symptoms with the assistance of a qualified expert. *See Ornelas v. Southern Tire Mart, LLC*, 292 F.R.D. 388, 392 (S.D. Tex. 2013) ("Even where a plaintiff chooses to forgo the use of an expert, courts have found that a defendant should not be compelled to limit its case to mere cross examination, as expert testimony can be essential to afford a defendant adequate opportunity to challenge the plaintiff's claim."); *Womack*, 205 F.R.D. at 447 (finding good cause for psychiatric IME because defense would be limited to cross-examination absent ability to develop its own evidence as to causation, an "insufficient test of truth"). Judge Wettre stated that "[t]he Court will not hamstring the defense by limiting that inquiry to the review of plaintiff's medical records and depositions of her treating physicians." (ECF No. 178 at 8.) Indeed, "[w]hile the probability of obtaining the information through other sources is pertinent to the 'good cause' inquiry, . . . a plaintiff may not avoid a Rule 35 examination simply on the grounds that other sources of information, such as medical reports and depositions of plaintiff's treating physicians, are available." *Ornelas*, 292 F.R.D. at 392. (*Id.* at 9.)

Plaintiff asserts that no good cause exists for the IME because she submitted to an independent neuropsychological examination by Dr. Christine Ghilain in January 2020 in connection with her application for a disability pension from the State of New Jersey. (Dwyer Decl., Ex. C, ECF No. 167-1.) Judge Wettre found that "the IME was conducted at the behest of the State of New Jersey, which is not a party to this action, by a psychologist who, as far as the Court is aware, is not a testifying fact or expert witness in this action. Defendants Mizdol, Simoldoni, and Moskal are entitled to consult their own expert to rebut the primary source of plaintiff's alleged damages." (*Id.*)

Judge Wettre appropriately addressed Plaintiff's remaining procedural objections to the

9

IME with Dr. Weiss, which Judge Wettre overruled, (*id.* at 9), by staying expert discovery deadlines and limiting the duration and scope of the examination to Plaintiff's claims of emotional distress. (*Id.*, at 10.)

This Court finds, under the clearly erroneous standard, that the Magistrate Judge's decision to grant Defendants' motion to compel Plaintiff to undergo an independent medical examination pursuant to Rule 35 of the Federal Rules of Civil Procedure was correct. Judge Wettre's decision thoroughly addressed all the factors in considering whether a party's mental condition is "in controversy" and the movant establishes "good cause" for the examination. Fed. R. Civ. P. 35(a), and this Court agrees with Judge Wettre's findings. The Court comes to the same conclusion for granting the motion. Finding no reason to modify or alter Judge Wettre's determination, this Court adopts the Memorandum Order and Order dated January 27, 2022 as its own.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's appeal (ECF No. 180) of the Magistrate Judge's Memorandum Opinion and Order dated January 27, 2022 is **DENIED**. Judge Wettre's Memorandum Opinion and Order dated January 27, 2022 granting Defendants motion to compel Plaintiff to appear for an independent medical exam (ECF No. 178), is **AFFIRMED**. An appropriate Order accompanies this Opinion.

**DATED: December 28, 2022**

HONORABLE JULIEN XAVIER NEALS
United States District Judge