**BROWN & CONNERY, LLP**
William M. Tambussi, Esq.
Kathleen E. Dohn, Esq.
Kayla L. Louis, Esq.
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey 08108
(856) 854-8900
kdohn@brownconnery.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
VICINAGE OF NEWARK**

| | |
|---|---|
| DEBORAH GROSS-QUATRONE,<br><br>        Plaintiff,<br><br>  vs.<br><br>BONNIE MIZDOL, DIANA MOSKAL, LAURA SIMOLDONI, and JOHN  and JANE DOE 1-10<br><br>       Defendants. | Civil Action No. 2:17-cv-13111-MEF-LDW |

---

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

---

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................iv

LEGAL ARGUMENT........................................................................................1

    I.     DEFENDANTS ARE IMMUNE FROM ANY
          COMMUNICATIONS TO THE ACJC FOR
          BOTH FEDERAL AND STATE CLAIMS.........................................1

    II.    PLAINTIFF CANNOT ESTABLISH STATE ACTION
          AS TO TCA SIMOLDONI AND FDM MOSKAL
          WHICH IS FATAL TO HER CLAIMS UNDER §1983
          AND THE NJCRA ..............................................................................2

    III.   PLAINTIFF'S DISCRIMINATION AND HOSTILE
          WORK ENVIRONMENT CLAIMS FAIL AS PLAINTIFF
          CANNOT ESTABISH SHE IS A MEMBER OF ANY
          PROTECTED CLASS NOR DEMONSTRATE ANY
          HARASSMENT OR DISCRIMINATION OCCURRED
          BECAUSE OF HER SEX ....................................................................3

         A.     Plaintiff Cannot Establish She is a Member of any
                 Protected Class Recognized by Law...........................................3

         B.     Plaintiff's Claim Against AJ Mizdol Fails as
                 She Cannot Demonstrate any Intentional
                 Discrimination Because of Sex....................................................4

         C.     Plaintiff is Unable to Demonstrate any Intentional
                 Discrimination by TCA Laura Simoldoni ..................................8

         D.     Plaintiff is Unable to Demonstrate any Intentional
                 Discrimination by FDM Diana Moskal ......................................8

    IV.   PLAINTIFF'S FOURTH AMENDMENT CLAIM UNDER
          COUNTS ONE AND THREE FAILS.................................................10

          A.     The ACJC's Findings of Fact Are Entitled to
                 Preclusive Effect .......................................................................10

      B.     Plaintiff Cannot Demonstrate State Action by
TCA Simoldoni, Did Not Have a Reasonable
Expectation of Privacy, and Defendants' Actions
Were Reasonable As a Matter of Law .......................................10

      C.     TCA Simoldoni and AJ Mizdol are Entitled to
Qualified Immunity ................................................................13

  V.     PLAINTIFF'S CLAIMS UNDER THE NJLAD MUST
BE DISMISSED AND THE DEFENSE IS NOT WAIVED .............13

CONCLUSION ......................................................................................15

## <u>TABLE OF AUTHORITIES</u>

### Federal Cases

*Adamo v. Jones*,
Civil Action No. 15-1073 (MCA), 2016 LEXIS 10698 (D.N.J. Jan. 29, 2016).......2

*Bibby v. Phila. Coca Cola Bottling Co.*
260 F.3d 257 (3d Cir. 2001)...................................................................................3, 5

*Bonenberger v. Plymouth Township*,
132 F.3d 20 (3d Cir. 1997)........................................................................................2

*Bradley v. U.S.,*
164 F. Supp. 2d 437 (3d Cir. 2001) .........................................................................8

*Brambrinck v. City of Phila.,*
No. 94-1673, 1994 LEXIS 16538 (E.D. Pa. Nov. 14, 1994)..................................13

*Calderon v. Ashmus*,
523 U.S. 740 (1998)................................................................................................14

*Campbell v. Supreme Court of New Jersey*,
Civil Action No. 11-555 (ES), 2012 LEXIS 41650 (D.N.J. Mar. 27, 2012)............1

*City of Ontario v. Quon*,
560 U.S. 746 (2010)................................................................................................12

*Davenport v. N.J. Bd. Of Pub. Utils*,
No. 18-13687 (GC), 2022 LEXIS 151452 (D.N.J. Aug. 23, 2022).........................14

*Doe v. City of Belleville*,
119 F.3d 563 (7th Cir. 1997)...................................................................................3

*Ellingsworth v. Hartford Fire Ins. Co*,
247 F. Supp. 3d 546 (E.D. Pa. 2017) .......................................................................3

*Gonzalez v. Sec'y of Dep't of Homeland Sec.*,
678 F.3d 254 (3d Cir. 2012)......................................................................................5

*Hayes v. Gilmore*,
802 F. App'x 84 (3d Cir. 2020) ..................................................................4

*Hicks v. State Dep't of Corr.*,
No. 16-0927-BRM-LHG, 2017 LEXIS 178333 (D.N.J. October 27, 2017)..........14

*Irving v. Chester Water Auth.*,
439 F. App'x 125 (3d Cir. 2011) ................................................................6

*Ivan v. Cty. of Middlesex*,
595 F. Supp. 2d 425 (D.N.J. 2009) ............................................................2

*J.L.D v. Estate of Gannon*,
No. 15-386, 2016 LEXIS 100312 (D.N.J. July 29, 2016) .........................................1

*Jones v. SEPTA*,
796. F3d 323 (3d Cir. 2015)......................................................................8

*Konopka v. Borough of Wyoming*,
383 F. Supp. 2d 666 (M.D. Pa. 2005)......................................................13

*Martins v. Rutgers*,
No. 19-08966, 2021 LEXIS 209586 (D.N.J. Oct. 29, 2021)...................................12

*Mazzetti v. N.J. Div. of Child Prot. & Permanency, No.*
No. 14-8134, 2017 LEXIS 45897 (D.N.J. Mar. 27, 2017) .......................................1

*New Jersey v. T.L.O.*,
469 U.S. 325 (1985).................................................................................12

*O'Brien v. South Suburban College*,
No. 93 C 7172, 1994 LEXIS 9729 (N.D. Ill. July 14, 1994)...................................11

*O'Connor v. Ortega*,
480 U.S. 709 (1987)................................................................................12

*Oncale v. Sundowner Offshore Svcs., Inc.*,
523 U.S. 75 (1998)..............................................................................5, 7

*Pena v. Div. of Child & Fam. Servs.*,

No. 08-1168, 2010 LEXIS 107755 (D.N.J. October 8, 2010) ...............................15

*Price Waterhouse v. Hopkins*,
490 U.S. 228 (1989)...................................................................................................3

*Prowel v. Wise Bus. Forms, Inc.*,
579 F.3d 285 (3d Cir. 2009)......................................................................................3

*Rekhi v. Wildwood Indus., Inc.*
61 F.3d 1313 (7th Cir. 1995)....................................................................................10

*Reyes v. McDonald Pontiac GMC Truck, Inc.*,
997 F. Supp. 614 (D.N.J. 1998) ................................................................................7

*Sharrar v. Felsing*,
128 F.3d 810 (3d Cir. 1997).....................................................................................13

*Uwalaka v. State of New Jersey*,
No. 04-2973, 2005 LEXIS 28121 (D.N.J. Nov. 10, 2005)......................................14

*Will v. Michigan Dep't of State Police*,
491 U.S. 58 (1989)...................................................................................................15

*Williams v. Lenape Bd. of Educ.*,
No. 17-7482, 2020 LEXIS 77757 (D.N.J. May 4, 2020) ......................................4, 5

*Zelinski v. Pa. State Police*,
108 F. App'x 700 (3d Cir. 2004)................................................................................2

## Federal Statutes & Rules

Fed. R. Civ. P. 12(h)(3)............................................................................................15

Fed. R. Civ. P. 56(c) and (e) ...................................................................................11

## State Statutes & Rules

R. 2:15-22(a) and (b)............................................................................................1, 2

**Other**

42 U.S.C. §1983 ............................................................................................1, 2, 4, 15

## <u>LEGAL ARGUMENT</u>

**I.    DEFENDANTS ARE IMMUNE FROM ANY COMMUNICATIONS TO THE ACJC FOR BOTH FEDERAL AND STATE CLAIMS.**

<u>R.</u> 2:15-22(b) provides immunity to witnesses who bring allegations to the ACJC concerning a judge. Plaintiff argues immunity is inapplicable to her claims under §1983 and does not apply to any communications outside of the ACJC. It is Defendants' position that they are immune from liability for any communications to the ACJC and for any testimony given at proceedings before the Committee, a three-judge panel, or the Supreme Court. *See* <u>R.</u> 2:15-22(b).

Courts in this district have applied <u>R.</u> 2:15-22 immunity to federal claims.  In *Campbell v. Supreme Court of New Jersey*, the Court held ACJC employees were immune under <u>R.</u> 2:15-22(a) from claims including unlawful race discrimination in violation of §1981 and conspiracy under §1985.  Civil Action No. 11-555 (ES), 2012 U.S. Dist. LEXIS 41650, at *26-28 (D.N.J. Mar. 27, 2012).  In *J.L.D v. Estate of Gannon*, the Court applied <u>R.</u> 2:15-22 immunity to plaintiff's federal claims against ACJC employees, including under 42 U.S.C. §1983, finding, "[o]ther judges of this Court have dismissed federal claims against members of the ACJC—indeed, against Tonelli himself—based on N.J. Ct. <u>R.</u> 2:15-22. I agree and will do the same."  No. 15-386 (KM), 2016 U.S. Dist. LEXIS 100312, at *37 (D.N.J. July 29, 2016). *See also Mazzetti v. N.J. Div. of Child Prot. & Permanency, No. 14-8134 (KM) (MAR), 2017 U.S. Dist. LEXIS 45897, at *30-31 (D.N.J. Mar. 27, 2017)* (applying <u>R.</u> 2:15-

22 immunity to federal and state law claims to Chairperson of ACJC); and *Adamo v. Jones*, Civil Action No. 15-1073 (MCA), 2016 U.S. Dist. LEXIS 10698, at *24-25 n.6 (D.N.J. Jan. 29, 2016) ("the ACJC and Executive Director Tonelli of the ACJC are also immune from suit pursuant to N.J. Court Rule 2:15-22" which included claims under 42 U.S.C. §1983).[1] Even if Defendants were not immune, Plaintiff claims still fail as set forth below and in Defendants' moving brief.

## II.   PLAINTIFF CANNOT ESTABLISH STATE ACTION AS TO TCA SIMOLDONI AND FDM MOSKAL WHICH IS FATAL TO HER CLAIMS UNDER §1983 AND THE NJCRA.

Without any requisite "state action," any claims under Section 1983 and the NJCRA fail. *See Ivan v. Cty. of Middlesex*, 595 F. Supp. 2d 425, 480 (D.N.J. 2009) ("A harasser who has no formal or de facto supervisory authority over plaintiff cannot be held liable under Section 1983 because the requisite element of state action is lacking.")  Plaintiff's claim that Simoldoni and Moskal were *de facto* supervisory employees is unsupported by the record. (Pl. Opp'n Br. at 21).

Courts look to "the substance of the individual defendant's job functions, rather than the form, to determine whether an employee was acting in a supervisory capacity." *Zelinski v. Pa. State Police*, 108 F. App'x 700, 703 (3d Cir. 2004) (citing *Bonenberger v. Plymouth Township*, 132 F.3d 20, 23–24 (3d Cir. 1997)).  The two

---

[1] R. 2:15-22(a) provides the same immunity provided to witnesses under subsection (b) to members and staff of the Committee for any conduct in performance of their official duties.

primary factors courts consider in determining "de facto supervisory control [are] 1) whether the defendant could alter the plaintiff's workload; and 2) whether the plaintiff would face charges of insubordination for failure to obey the defendant's order." *Id.* Here, neither are true, which Plaintiff fails to contradict. (*See* DSMF ¶¶7–8.)

### III. PLAINTIFF'S DISCRIMINATION AND HOSTILE WORK ENVIRONMENT CLAIMS FAIL AS PLAINTIFF CANNOT ESTABLISH SHE IS A MEMBER OF ANY PROTECTED CLASS NOR DEMONSTRATE ANY HARASSMENT OR DISCRIMINATION OCCURRED BECAUSE OF HER SEX.

#### A. Plaintiff Cannot Establish She is a Member of any Protected Class Recognized by Law.

Plaintiff has failed to identify any case law supporting a claim when a plaintiff conforms too much to stereotypes of her gender. All of the cases cited by Plaintiff fall under the third scenario identified in *Bibby v. Phila. Coca Cola Bottling Co.* 260 F.3d 257, 262-63 (3d Cir. 2001). *See Doe v. City of Belleville*, 119 F.3d 563, 575 (7th Cir. 1997) (discrimination of man who "did not conform to male standards"); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 240 (1989) (Title VII bars discrimination of a woman who failed to "act like a woman"); *Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 292 (3d Cir. 2009) (finding Title VII claim based upon "failure to conform to gender stereotypes"); and *Ellingsworth v. Hartford Fire Ins. Co*, 247 F. Supp. 3d 546, 553 (E.D. Pa. 2017) (claim "based on a perceived lack of effeminacy" and failure "to conform to a traditionally feminine demeanor and

3

appearance"). None of these cases support Plaintiff's alleged protected status based on her expensive style, high heels, hair, and jewelry. (*See* DSMF ¶25.)

### B. Plaintiff's Claim Against AJ Mizdol Fails as She Cannot Demonstrate any Intentional Discrimination Because of Sex.

Plaintiff argues that discrimination is based on the totality of the circumstances in an attempt to lump all of her allegations together to create liability against each of the Defendants. This ignores Plaintiff's obligation to demonstrate state action and how a supervisor can be found individually liable under Section 1983 and the NJCRA. As noted above, Plaintiff cannot demonstrate state action as to TCA Simoldoni and FDM Moskal. Her claims as to all three Defendants further fail as her allegations are supported solely by her own self-serving assertions, belied by the record, and insufficient as a matter of law.

Plaintiff must show that AJ Mizdol, as her supervisor, was personally involved in violating her rights. "Section 1983 plaintiffs cannot prevail on a theory of *respondeat superior*; rather, they must show that the defendant was personally involved in violating their rights." *Williams v. Lenape Bd. of Educ.*, No. 17-7482 (RBK/JS), 2020 U.S. Dist. LEXIS 77757, at *55 (D.N.J. May 4, 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)) (holding that plaintiffs must show that "each Government-official defendant, through the official's own individual actions, has violated the Constitution."). "Personal involvement 'can be shown through allegations of personal direction or of actual knowledge and acquiescence.'"

*Williams*, 2020 U.S. Dist. LEXIS 77757, at \*55 (citing *Hayes v. Gilmore*, 802 F. App'x 84, 86 (3d Cir. 2020)).  A defendant must "have actual, personal knowledge of the violation—constructive knowledge does not suffice."  *Williams*, 2020 U.S. Dist. LEXIS 77757 at \*55.

Plaintiff argues that AJ Mizdol made comments about her hair and flip flops, greeted her back to Bergen County by exclaiming are there any other fucking vacations I'm not aware of, gave her rules which only applied to her, said she would knock plaintiff off of the pedestal they had put her on in Passaic, assigned her a parking spot next to her, frequently checked in on her, yelled and berated her, and spoke sternly to male judges while yelled at Plaintiff. (*See* Pl. Opp'n Br. at 2–4.)  It is not evident from the face of any of these purported statements that they are because of any gender stereotype nor can Plaintiff demonstrate that any action was taken against her which differed from anyone who does not display feminine qualities. *Bibby*, 260 F.3d at 264 (citing *Oncale v. Sundowner Offshore Svcs., Inc.,* 523 U.S. 75, 81 (1998)) (a plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimination because of sex.'")

Plaintiff's reliance upon her own deposition testimony to support these allegations (except that AJ Mizdol yelled at her but spoke sternly to male judges), is fatal to her claim.  (*See* Plaintiff's Statement of Uncontested Material Facts

("PSUMF") at ¶¶ 4, 7, 8, 9, 10, 11, 14, 15, 24.) *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) ("conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment"); *Irving v. Chester Water Auth.,* 439 F. App'x 125, 127 (3d Cir. 2011) ("self-serving deposition testimony is insufficient to raise a genuine issue of material fact").

Plaintiff's allegations are further belied by the record. Plaintiff cites to AJ Mizdol's deposition testimony to support her allegation that AJ Mizdol yelled at Plaintiff but spoke sternly to male judges. (*See* Pl. Opp'n Br. at 21.) This is false. AJ Mizdol testified she spoke sternly to plaintiff as well as to male judges. (*See* Mizdol Dep. Tr. 82:20-85:18, Ferrara Decl., Ex. A). Plaintiff further admitted she was not claiming AJ Mizdol did not call other judges or check in with them at the same times. (*See* DSMF at ¶37.) AJ Mizdol gave the same rules to the male judge as Plaintiff. (*See id.* at ¶35.) Plaintiff's claim that Moskal said she was working with Judge Mizdol and Ms. Simoldoni on "getting rid of Judge Gross-Quatrone" is not supported by the record. (*See* Pl. Opp'n Br. at 20 (citing to ACJC testimony of Team Leader Loretta Little)) Ms. Little stated Moskal allegedly said "[w]e're working on getting rid of Judge Quatrone." This statement does not identify who the alleged "we're" are. (*See* Little Tr. at 32, Ferrara Decl., Ex. C.) Thus, there is no link to AJ Mizdol. Even if there was, Plaintiff identifies no record evidence demonstrating that AJ Mizdol said this or knew Moskal allegedly said this.

6

Plaintiff's claim that courthouse staff freely called her "The Diva Judge" and commented about her "fancy clothes and a big ring" which "supports the reasonable inference that the court house staff felt that they could insult a sitting judge with name calling impunity, which could only come from Judge Mizdol" finds no support in the record. (Pl. Opp'n Br. at 5 and 20). Plaintiff did not personally hear *any* of these statements. (*See* DSMF at ¶41.) More importantly, Plaintiff fails to cite any support in the record demonstrating AJ Mizdol heard any such comments or was actually aware of them and permitted them to continue. (*See* PSUMF ¶16.) To the contrary, AJ Mizdol testified she did not hear staff referring to Plaintiff as "Judge Diva." (*See* Def. Response to PSUMF ¶16, Dohn Decl., Ex. R at 100:15-101:12.) Plaintiff further fails to cite to any record evidence which demonstrates AJ Mizdol was aware of Kathy Palmer[2], allegedly saying, "The bitch won't give me the files." (*See* PSUMF ¶22.) This claim is not only Plaintiff's self-serving statement, but, even if true, is insufficient to establish liability. *See Reyes v. McDonald Pontiac GMC Truck, Inc.,* 997 F. Supp. 614, 617 (D.N.J. 1998) (citing *Oncale v. Sundowner Offshore Svcs., Inc.,* 523 U.S. 75, 118 (1998)) ("the fact that [the supervisor] referred to plaintiff on two occasions as a 'bitch' or 'Miss F****** Queen Bee' does not show that she was discriminated against because of her sex"). In the same way, the

---

[2] Kathy Palmer is not a judge, but an employee of Children in Courts who worked under Jessica Mulligan. (*See* Pl. Dep. Tr., Def. Ex. A, at 130:4–13.

comments alleged by Plaintiff referring to her "beach hair," "fancy clothes," and "bare legs" are not in and of themselves discrimination because of Plaintiff's sex.

Plaintiff further claims she need not show an adverse employment action but need only prove that she was detrimentally affected. (*See* Pl. Opp'n Br. at 21.) That is not accurate. To state a claim for discrimination on the basis of gender, Plaintiff must show that she was treated differently from others who were similarly situated, and that the difference in treatment was due to her gender. *Bradley v. U.S.,* 164 F. Supp. 2d 437, 445 (3d Cir. 2001); *see also Jones v. SEPTA*, 796. F3d 323, 327 (3d Cir. 2015). As stated above and in Defendants' original brief, she fails to do so.

### C. Plaintiff is Unable to Demonstrate any Intentional Discrimination by TCA Laura Simoldoni.

Plaintiff's claim that FDM Moskal said she was working with AJ Mizdol and Simoldoni to get rid of Plaintiff fails for the same reason stated above. Plaintiff's claim that all Defendants failed to stop staff "talk of Plaintiff," is unsupported by any citation to the record which demonstrates TCA Simoldoni was aware any of such talk and failed to take action. Simoldoni's actions in removing her law clerk after the law clerk accused Plaintiff of a hostile work environment fails to demonstrate discrimination because of sex. (*See* DSMF at ¶65.) Nor can she demonstrate, as discussed more fully below, TCA Simoldoni's actions in removing a recorder from the top of Plaintiff's purse was because of sex.

### D. Plaintiff is Unable to Demonstrate any Intentional Discrimination by FDM Diana Moskal

Moskal testified that comments about plaintiff's nice clothes, the way she carried herself, and her jewelry were made during ***one*** meeting among team leaders and assistant managers and she did not recall who stated them.  (*See* Moskal Tr. at 287:22-296:7, Pl. Ex. B).  The comment attributed to Ro Cucio, that Moskal called Plaintiff "Judge Diva" and that the "Diva Judge was returning from Passaic" both come from Plaintiff's own self-serving deposition testimony.  (*See* Pl. Opp'n Br. at 20 (citing GQ Tr. at 84:21-23; and 112:22-113:3, Dohn Cert., Ex. A.)) In support of the allegation that Karen Francis said Moskal called Plaintiff a bimbo, Plaintiff cites to the deposition transcript of Moskal. However, the testimony came in the form of a question *posed to* Moskal that "Karen Francis…said that she was told by a number of staff people that you actually called Judge Gross-Quatrone a diva and a bimbo. Is she not telling the truth?"  (*See* Moskal. Tr. at 297:3–7, Ferrara Decl., Ex. B.)  Not only does Plaintiff not cite to record evidence of Karen Francis making this statement, but from the question posed Karen Francis did not hear Moskal state this. Furthermore, Moskal denied it. (*Id.* at 297:11–18.)  Regarding the allegation by Ms. Little that Moskal told her she was trying to get rid of Plaintiff, Ms. Little believed that statement was made because of the Jessica Mulligan incident and the incident with Plaintiff's law clerk, further belying any claim of discrimination based upon sex. (*See* Tr. Formal Hearing at 243:7–10, Dohn Decl., Ex. S.)

## IV.   PLAINTIFF'S FOURTH AMENDMENT CLAIM UNDER COUNTS ONE AND THREE FAILS

### A.   The ACJC's Findings of Fact Are Entitled to Preclusive Effect

Defendants seek not to bar Plaintiff's Fourth Amendment claim based upon the ACJC's findings, but for the Court to give preclusive effect to the findings of fact as the ACJC heard all relevant testimony pertaining to the alleged search of Plaintiff's purse. That the ACJC made no ruling that Simoldoni's actions violated the Fourth Amendment does not prevent this Court from applying preclusive effect to the findings of fact. *Rekhi v. Wildwood Indus., Inc.* 61 F.3d 1313, 1317 (7th Cir. 1995) (observing that issue preclusion can apply to issues of law and issues of fact). The findings of fact made by the ACJC and adopted by the New Jersey Supreme Court as to the circumstances of Plaintiff's misconduct in recording the meeting and then lying about it when confronted formed the very basis upon which she was disciplined, which was memorialized in a final order. (*See* DSMF at ¶¶92–94.)

Plaintiff's argument that estoppel should not apply as the majority of her testimony was not recorded is unavailing as Plaintiff was afforded the opportunity to re-testify **and declined– twice**.  (*See* Def. Exhibit M, Presentment, at 15.) She cannot now claim she is prejudiced by that fact.  Plaintiff's claim fails regardless of whether this Court gives the ACJC's findings preclusive effect.

### B.  Plaintiff Cannot Demonstrate State Action by TCA Simoldoni, Did Not Have a Reasonable Expectation of Privacy, and Defendants' Actions were Reasonable As a Matter of Law.

10

Plaintiff's reliance on *O'Brien v. South Suburban College*, is misplaced not only as not being binding upon this Court but *O'Brien* involved the search of a *former* employee's purse by the library director in a public library. No. 93 C 7172, 1994 U.S. Dist. LEXIS 9729, at *1 (N.D. Ill. July 14, 1994). The court read the *pro se* Plaintiff's complaint liberally to find the search was not in accord with office practices and was conducted "under coercion and duress" such that plaintiff "feared for her personal safety." *Id.* at *13-15. Plaintiff was a <u>present</u> employee impermissibly recording a private meeting in violation of her employer's directives and the recording device was removed from her open purse without any physical threat, coercion, or duress. (*See* DSMF at ¶¶78–80.)

Plaintiff's argument that Defendant Simoldoni did not know what the red beaming light was when she reached into Plaintiff's purse is belied by the record in which Simoldoni clearly testified she knew it was a recorder and saw the words "Olympus" written on it. (*See* DSMF at ¶80.)[3]

Even if this Court finds that Plaintiff had a reasonable expectation of privacy to her open purse, TCA Simoldoni's seizure of the recording device and copying of

---

[3] Plaintiff, again, misrepresents deposition testimony. *See* Defendant's Response to Plaintiff's Statement of Uncontested Material Facts at ¶33. Furthermore, to the extent that Plaintiff's Response to Statement of Undisputed Material Facts and Statement of Additional Facts do not cite to the record, or admit in part but do not specify what the denial is, Defendant's statement of facts should be admitted and Plaintiff's additional facts disregarded pursuant to Fed. R. Civ. P. 56(c) and (e). (*See* PRSUMF ¶¶ 6, 11, 29, 30, 53, 54, 56, 59, 61, 63, 71 76, 79, 82, 84, 87, 88, 98 and Plaintiff's Statement of Additional Facts ¶¶ 8,9, 13.)

its contents upon advice of counsel was reasonable in light of Plaintiff's misconduct. *See New Jersey v. T.L.O.,* 469 U.S. 325, 327–29 (1985) (holding the search of a student's **closed** purse was reasonable when the vice principal had received a report that the student had been smoking). The search was reasonable at its inception when the recorder was retrieved from Plaintiff's open purse in light of Plaintiff's misconduct in recording the meeting after her request to do so was denied.  The scope of the search, including making a copy of the recording upon advice of counsel, was reasonable in light of Plaintiff lying about recording the meeting, claiming she did not know how the recorder works. (*See* Moskal Dep. Tr. at 270:14-16, Ferrara Decl., Ex. B; and DSMF at ¶73.)  *See City of Ontario v. Quon*, 560 U.S. 746, 764–65 (2010) (holding search of police officer's text messages was reasonable when search was conducted for a legitimate work-related purpose and was not excessive in scope); and *Martins v. Rutgers*, Civil Action No. 19-08966 (MAS) (DEA), 2021 U.S. Dist. LEXIS 209586, *19-21 (D.N.J. Oct. 29, 2021) (performing a forensic image of an employee's office computer and seizure of the employee's work cell phone reasonable as part of an investigation into workplace misconduct).

This is not a jury question, but a question for the Court.  *T.L.O*, *supra*, 469 U.S. at 328–329 (**The Court** held the search was reasonable). *See also O'Connor v. Ortega*, 480 U.S. 709, 729 (1987) (directing on remand that "**the District Court** must determine the justification for the search and seizure, and evaluate the

reasonableness of both the inception of the search and its scope.") (emphasis added); *Sharrar v. Felsing*, 128 F.3d 810, 828 (3d Cir. 1997) ("reasonableness of the officers' beliefs or actions is not a jury question"); and *Brambrinck v. City of Phila.,* No. 94-1673, 1994 U.S. Dist. LEXIS 16538, at *46 (E.D. Pa. Nov. 14, 1994) (**The Court** determined the inception and scope of a public employer's search of its employees' lockers, including bags, was lawful).

### C. TCA Simoldoni and AJ Mizdol are Entitled to Qualified Immunity.

Plaintiff's reliance on *Konopka v. Borough of Wyoming* is misguided. 383 F. Supp. 2d 666 (M.D. Pa. 2005). In *Konopka*, the plaintiff utilized his own personal desk for work. During a party, one of the defendants opened plaintiff's desk drawer, removed a tape recorder and another defendant listened to the recording. There was no employment relationship between the plaintiff and defendants were both law enforcement officials. The Court concluded that plaintiff had a reasonable expectation of privacy in his drawer and recording device under the circumstances that the search was not reasonable thus, defendants were not entitled to immunity. *Id*. at 680. This stands in stark contrast to TCA Simoldoni's actions. Plaintiff's remaining argument lacks merit as there was no illegal search at the inception and Defendants' reliance on the advice of counsel to make a copy of the contents was reasonable as set forth more fully in Defendants' moving brief.

### V.   PLAINTIFF'S CLAIMS UNDER THE NJLAD MUST BE DISMISSED AND THE DEFENSE IS NOT WAIVED.

Plaintiff's reliance on *Uwalaka v. State of New Jersey*, is misplaced as the majority of decisions in this district have held individually named defendants cannot be liable for aiding and abetting when the state employer is immune from liability. No. 04-2973 (SRC), 2005 U.S. Dist. LEXIS 28121 (D.N.J. Nov. 10, 2005).  In *Davenport v. N.J. Bd. Of Pub. Utils*, the court reasoned, "[w]hile NJLAD allows for individual liability on aiding and abetting grounds, courts in this district have dismissed claims against state employees acting in their individual capacities. These courts reason, 'individual liability does not exist under the NJLAD absent evidence that the individual was 'aiding and abetting' discrimination by the employer,' and 'such proof is impossible if the Court has no jurisdiction over the [state] employer.'" No. 18-13687 (GC), 2022 U.S. Dist. LEXIS 151452, at *30 (D.N.J. Aug. 23, 2022). The Court further held, "While at least one district court has found the other way [citing *Uwalaka, supra*], the Court finds the reasoning of the majority of the courts persuasive." *Id. See also Hicks v. State Dep't of Corr.*, No. 16-0927-BRM-LHG, 2017 U.S. Dist. LEXIS 178333, at *11 (D.N.J. October 27, 2017) ("[T]his Court has found the state employer's immunity preludes a claim for aiding and abetting against an individual defendant" thereby dismissing the Plaintiff's NJLAD claims against the individual defendant).

This defense is not waived as sovereign immunity can be raised at any phase of litigation. *Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998). Sovereign immunity

would apply to the individually named defendants if sued in their official capacity. *See Pena v. Div. of Child & Fam. Servs.,* No. 08-1168(RMB/AMD), 2010 U.S. Dist. LEXIS 107755, at *14(D.N.J. October 8, 2010) ("Sovereign immunity extends to cover individual officials sued in their official capacities"). Plaintiff further could not bring suit against Defendants in their official capacities as neither the State nor its officials are subject to suit under Section 1983 because neither are a "person" as defined therein. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Pursuant to Fed. R. Civ. P. 12(h)(2), failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense may be raised in the answer, on a motion per Rule 12(c), or at trial.  Per Fed. R. Civ. P. 12(h)(3), lack of subject matter jurisdiction may be raised at any time.

## CONCLUSION

For the reasons stated herein, Defendants' motion for summary judgment should be granted.

Respectfully submitted,
**BROWN & CONNERY, LLP**
*Attorneys for Defendants*

Dated: February 26, 2024          **s/** *Kathleen E. Dohn*
William M. Tambussi, Esq.
Kathleen E. Dohn, Esq.
Kayla L. Louis, Esq